The next case is Joy Construction Corp. v. StarStone Specialty. Thank you so much. Mr. Mellon, you reserve three minutes. Yes, Your Honor. I please the Court. My name is Joshua Mellon from the Law Firm of Leggett Myers, representing the appellant in this action. The issue here is whether or not the district court committed error in its analysis when it granted the defendant's motion to dismiss the pleading and denied the plaintiff's cross-motion for partial summary judgment with respect to the duty to defend. The policy issue here is a private company management liability insurance policy, which provides explicitly, in part, coverage for employment wrongful acts. Employment wrongful acts is then further defined and includes discrimination, sexual or workplace harassment, employment discrimination, and retaliation. Okay. You're not taking the position that the contract language is ambiguous. Is that right? No. We are not taking that position. Okay. So can you tell me what the textual reason is why claim does not encompass proceeding as defined? I'm sorry, Your Honor. I missed your last part. Why claim does not encompass proceeding. Okay. So that's one of two defenses of the carrier. I'll go right into that. So the term claim, as the briefs have discussed, have been interpreted differently by New York State courts and various Federal courts. I think what's important is that in the primary Federal case relied upon by defendant, the Dow Leader case, it contained in the exclusion to which it was interpreting, it included language that said in whole or in part. So if you look at the sexual abuse exclusion in our case, it doesn't say in whole or in part. So when Dow Leader was trying to decide what claim was incorporating, it was able to focus on the whole or in part in deciding whether or not in that case injunctive relief was required. The New York State courts take a different view as well as the district court in Darwin. But I also think what's important, Your Honor, is that in analyzing any of these, because we have to give meaning to all of the terms of the policy, is the particular allocation clause provided in this particular policy. That allocation clause, and I'll read from it, but that allocation clause acknowledges that you can have covered and uncovered claims where the position of Starstone here is, in a worst-case scenario, even if you, Joy, can identify particular items or particular claims that fall within the harassment coverage, because it's a claim and we take claim monolithically, there is no coverage, period. So if that's the case, the allocation provision, once you apply it, makes no sense, because it says if both loss covered by the policy and loss not covered by the policy are incurred as a result of a claim, the insured and the insurer shall use their best efforts to allocate such amount between covered loss and uncovered loss based on the relative legal and financial exposures of the party. Can I ask a question? Is it your position that the allocation provision has to be superfluous for every exception in the policy, or that it would be superfluous? My focus on the allocation provision, it deals with how one is to understand claim, because the allocation provision acknowledges that in the... You're suggesting that we look at another part of the contract to understand a term that is defined. Well, our courts do that all the time. We look at all terms of the policies to see what's consistent, especially in a situation here where you have the New York State courts saying that the defined term claim read in a way so as to foreclose any coverage, notwithstanding certain claims or allegations that would be covered gets wiped out. They, the New York courts, the New York State courts say this is an artificial, rigid interpretation which is not consistent, in essence, with the expectation of the parties and rejected that methodology. And what I'm suggesting to you is that when that, consistent with that, if you look at the allocation provision, that provision cannot exist with the way that the term claim is being interpreted. Would there be a problem with it just not applying in a particular circumstance? Well, the allocation provision acknowledges that you can have uncovered and covered claims in which defense costs then get paid 100 percent going forward. Claim definition, as interpreted by the carrier, says no. There will never be an uncovered claim because, I'm sorry, there will never be a situation where you would pay monies with respect to covered claims because as soon, as long as one part of the claim is not covered, everything is gone. So either two can't exist at the same time. Can I ask, this is a question that's preliminary to the meaning of claim. What conduct in the EEOC complaint charge does not include either sexual abuse or licentious immoral or sexual behavior intended to lead or culminate in any sexual act? Sure. Let me go there. The EEOC charge, the complaint, which is the operative document here, basically spans a period of time, generally from March of 2023 to October of 2023. It alleges in March, beginning in March, various statements that are made about this woman's body and solicitous conversation. Now, that changes, admittedly, in September and October, where the interactions become much more threatening, and finally there is actual physical abuse. So we're not So I guess I'm asking, what of what you just described in that So just verbal Didn't include either sexual abuse or, and I'm just reading the language from the exclusion, licentious immoral or sexual behavior intended to lead or culminate in any sexual act? And specifically, what allegations, what Right. So we go to the record, and specifically we're going to focus on A92, paragraph 11, where the allegations are, you are hot, I like everything about you, I like your body, we should be together, we should have fun together, you have a nice body, I'm attracted to you, and that paragraph in number 11. And your contention is that that is not licentious immoral or sexual behavior intended to lead or culminate in any sexual act? That is my contention. And the contention is based on the fact that if you broaden it as far as the carrier wants to broaden it, you do have illusory coverage. And the understanding of the Lend-Lease case relied on by the district court I mean, would it be illusory? Because couldn't somebody say, oh, I don't want to work with a woman because I think women are silly? Right? Like, that wouldn't But that wouldn't be sexual harassment. Right. There's coverage for sexual harassment. Meaning That's the point. That would be within the coverage and not excluded. That would be within the coverage, but it wouldn't be But the point is, your coverage How does the exception swallow the rule? Right. If we can come up with a set of facts that would You have to be able to read the policy. So there is some coverage for sexual harassment. If you read sexual abuse exclusion so broad as to incorporate anything that would also constitute sexual harassment, you've made the sexual harassment coverage, which premium was paid for What I think is being asked, and I will try to ask it again, is what is only harassment and not either The items that I just enumerated.  So your body parts attract me? That's not licentious moral culminating It can't be. If you say that it is, then you do have illusory coverage. Okay. Because that's exactly what the court of appeals in Lend-Lease suggested, that you have illusory That you only don't have illusory coverage if you can come up with some scenario under which there would be coverage under this part. So I would invite the carrier Well, that's what I'm saying. If somebody just said, I don't want to work with you because you're silly. Women are silly. Women shouldn't be doing this work. Like, I can't believe I have to work with you because women are silly. That's not sexual harassment. I have sexual harassment coverage. That has to mean something. That's a bedrock principle. You cannot have an exclusion that completely swallows my sexual harassment coverage that I've paid for. That's the principle I'm trying to articulate. Thank you. We'll hear from you again. May it please the Court. My name is Rafael Rivera, Jr., from the law firm of Cozen O'Connor, and I represent Starstone Specialty Insurance Company. I wanted to begin with a few remarks that opposing counsel just made. I think it's important to understand that although sexual harassment is an employment wrongful act, it's defined as an employment wrongful act under the policy, in order to implicate coverage under the policy, the insuring agreement must be satisfied. So it's our position that this policy is not a sexual harassment policy or provides automatic sexual harassment coverage. Yes, it's an employment wrongful act, but in addition to satisfying the definition of an employment wrongful act, other requirements are set forth in the insuring agreement. In addition, just because you're able to satisfy the definition of an employment wrongful act under the policy does not mean that, you know, a particular claim alleging that employment wrongful act is not subject to the policy's exclusion. Well, is there sexual harassment that's covered that's not excluded? And what would it be? Is there sexual harassment in this case or a hypothetical? No, under the policy. So the coverage includes, number three, sexual or workplace – within the definition of employment wrongful act, sexual or workplace harassment, including bullying. So what – and then the exclusion says what the exclusion says. What would – is there anything that would fall within sexual or workplace harassment that is not excluded? Yeah. Yeah, so it would be our position, Your Honor, that isolated instances, for instance, of verbal remarks that are unwelcomed or that are offensive, that are sexual in nature, that are not accompanied by sexual abuse or licentious and immoral or sexual behavior intended to culminate in a sexual act. Those isolated instances of sexual harassment would be covered. In addition – Well, so then let me ask, if there is an isolated incident of a licentious, immoral, or sexual behavior intended to lead or culminate in any sexual act, is that covered or excluded? That would be excluded under the policy because it would fall under subsection C of the exclusion. And in addition to unwelcome remarks that are sexual in nature, opposing counsel cites the definition of sexual harassment by the EEOC in its brief, and that also includes not just harassment being sexual in nature, but also can include offensive remarks about a person's gender as well. So isolated instances of that type of conduct would, in our position B, would fall under the definition of sexual harassment. So repeated unwelcome bullying comments of a, I don't want to work with women, women are silly, women shouldn't be doing this job, that would be covered because that is sexual harassment, even if it's not sexualized language. Sexual in nature, yes, that would be our position. Can you tell me about how you think the allocation provision works in all of this? Yeah, sure. So it's our position that it's unambiguous, but also importantly that it's a condition to the policy and it's not a grant of coverage under the policy. In order to implicate the allocation provision, there must be first covered loss. And as the district court correctly noted, in our opinion, this particular EEOC complaint filed in this administrative proceeding did not include any covered loss. So we don't reach the analysis that opposing counsel referenced in his oral argument that, you know, a claim can be covered or uncovered. But, you know, I also think that it's important to note that in finding that an allocation provision can somehow create coverage, a condition can somehow create coverage, it would be our position that that would render unambiguous, broad, exclusionary language superfluous. And under New York insurance interpretation principles, we are told that, you know, we should caution against interpreting particular provisions in a way that would make them superfluous. Right. But they're saying the flip side is that you are saying that all of their protections and policy that they paid for that you're going to come in and defend and help with would then be rendered superfluous because the exception will swallow the rule. So why does that presumption that we do need to honor cut in your favor? Well, because I think that with respect to this particular allocation provision in the context of this case, the argument being raised is that, you know, if we were to apply the exclusion as is, it would not give meaning to this phrase within the allocation provision. But there are exclusions. No, no, no. It's not just the allocation provision. It's like the entire part of the policy that protects them or that makes them think that they have insurance if one of their employees commits sexual harassment of any nature. It's not the allocation provision. It's like the bigger chunk of what they're getting covered. The illusory coverage argument?  Yeah. So, you know, our response to that is that in addition to sexual harassment, there are several other different types of employment wrongful acts that are potentially covered under the policy. Excuse me. In addition, our particular exclusion has intentionally broad language. There are other exclusions in the policy that, you know, bar coverage for ERISA or NLRA-related risks. Unlike this particular exclusion that bars coverage for claims based upon or rising out of in any way involving the two components that we mentioned, sexual abuse and licentious and immoral behavior. So there are other provisions in the policy that could or I'm sorry, let me rephrase. There are other exclusions in the policy that indicate that the allocation provision does not swallow, hold the insurance coverage purchased by the policy. What is your best Second Circuit opinion in support of that proposition? In support of the proposition with respect to the allocation provision?  So in the day leader matter, which was affirmed by this court, the district court there specifically addressed the argument that the allocation provision there could somehow trump the broad bankruptcy exclusion that was at issue at play in that case. And similar to what the district court did here, there, the ruling was, if there's no covered loss to begin with, then the allocation provision is simply inapplicable. So you have one definition of claim. He asks another. Does the two competing definitions render it ambiguous? No, Your Honor. I don't believe so. You know, the definition of a claim is an administrative proceeding here commenced by the filing of a complaint. It does not indicate that a claim should be analyzed on an allegation-by-allegation basis. That interpretation was rejected in the day leader matter and has been rejected in the Pareto case as well and in additional SDNY opinions. So I don't, I mean, we are Does it matter that there are appellate division state cases that seem to go in the other direction? No. As the district court noted, I think as an initial matter, it was not strictly bound by those state appellate court decisions. But also, the main case, the West Point case, where this argument kind of resonates, had an entirely different exclusion. It only barred coverage in that case for claims arising out of whatever the excluded risk was. So the court there decided, you know, we think inappropriately because the definition of a claim still included a proceeding, but it decided to interpret a claim on a cause-of-action-by-cause-of-action basis. That is different from our case in which we have this broad preparatory language that has different meanings and should be applied differently in the context of the, with respect to the underlying claim. The, that, even if that's true for West Point, the Alvarez case, which I think is also a First Department case, I think has the same definition of claim. Well, in the Alvarez case, Your Honor, it barred coverage for any portion of a claim, not a claim itself. And we believe that our policy is more broadly interpreted and that was more narrow with respect to the application of that exclusion. Going back for a moment to Dale Leder. Yes, Your Honor. With respect to the consideration of West Point, was that West Point distinguished? West Point was distinguished. In the Second Circuit. That's my understanding, yes.  Thank you. Okay. Thank you. And Dale Leder is also distinguished. As I had indicated, they're interpreting a different policy exclusion that says in full or in part, which allows the Dale Leder Court to reach the way it did. I think, Your Honors, reached, raised questions that are fundamental. And we dropped a footnote that would invite, theoretically, the Court to certify this question to the New York Court of Appeals. But an insured should never have a situation where in a similar policy as if they went to State court, the analysis of covered and non-covered causes of action is interpreted one way based on a definition of claim. And I go to Federal court and it's a completely different treatment when the Federal courts are attempting to interpret the State court law. So while we don't have a conflict. Go ahead. That ship sailed with Dale Leder, didn't it? I'm sorry. Didn't that ship sail with Dale Leder? No. Because, well, from the Federal perspective, it may have. But, again, it was interpreting a policy that had an exclusion that explicitly said in full or in part. And that was easily led them to define the claim broadly. But the State court cases, including Darwin, which was issued after one of the Federal cases, the Angoglia case. Darwin was issued in 2015. Angoglia was 2009. That was the initial Federal case that took the other turn. So you have a — If the State court rejected West Point and not distinguished it, then aren't I just bound by that to the point that even certification isn't really an option? I don't think so. Because while it may have, quote, unquote, rejected it, it rejected it based on, in part, it said that West Point was dealing with a different, more broader policy. So these are all — That's distinguishing, not rejecting, I think. Exactly. So I would submit to you that — The premise of my question is I read Dale Leder to have rejected West Point. Am I bound by that to the extent that it would preclude certification? I don't think you're bound by it to the extent that at any point the Court is attempting to determine what New York State law would be. And so you have to be very careful when you have appellate divisions, State court decisions saying one thing, and the Federal courts in a different context saying something else. But aren't Second Circuit panels bound by Second Circuit — prior Second Circuit determinations of State law? A determination as to what it thinks the Court of Appeals is going to do. So I don't know that I would agree that you're bound by that if you deem it rejected, although I don't believe it was rejected. I believe it was distinguishable. I just want to quickly get — go back to, Judge, your question on allocation. The allocation provision in Dale Leder was different from the allocation provision here. The allocation in Dale Leder explicitly said it only covers covered losses, not covered and uncovered losses. That's a significant distinction. Thank you so much. We will take the case under advisement. We appreciate your argument.